**FILED**

MAY 1 0 2013

~~signature~~
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BETTOR RACING, INC. and J. RANDY GALLO, | Civ. 13- _4051_ |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| NATIONAL INDIAN GAMING COMMISSION. | |
| Defendant. | |

COME NOW the Plaintiffs, Bettor Racing, Inc. and J. Randy Gallo (collectively the "Plaintiffs"), and for their Complaint against the above-named Defendant ("Defendant"), state and allege as follows:

### THE PARTIES

1.     The Plaintiff, Bettor Racing, Inc. ("Bettor Racing") is a corporation duly organized and existing under the laws of the State of South Dakota.

2.     The Plaintiff, J. Randy Gallo ("Gallo"), is a natural person who resides in Jupiter, Florida.

3.     The Defendant, National Indian Gaming Commission, is an independent federal regulatory agency created pursuant to the Indian Gaming Regulatory Act of 1988.

4.     The Flandreau Santee Sioux Tribe is not a party to this action, but for purposes of this Complaint is herein identified as a federally recognized Indian tribe, which tribe has been granted a federal charter of incorporation (the "Tribe"). The Tribe, acting in its corporate capacity, owns a gambling casino located in Flandreau, South Dakota, which casino is commonly known as the "Royal River Casino." The Royal River Casino is operated pursuant to a Tribal-State Compact.

## JURISDICTION

5.    This Court possesses jurisdiction over the parties pursuant to 5 U.S.C. § 702 and venue in this division is proper pursuant to 5 U.S.C. § 703.

## FACTUAL ALLEGATIONS

6.    This controversy has its origins in the business relationship between Bettor Racing and the Tribe and their agreement to the location and operation of Bettor Racing's Class III, pari-mutuel gaming business at the Tribe's casino, The Royal River Casino, in Flandreau, South Dakota.

7.    In 2003, Bettor Racing and the Tribe entered into discussions regarding the relocation of Bettor Racing's pari-mutuel gaming business at the Royal River Casino.  At the outset of the parties' business relationship in 2003 and 2004, the Tribe through its Casino provided a more hospitable environment for the operation of Bettor Racing's off-track betting operation than that available under South Dakota law.  Specifically, the applicable wagering pool fees to be paid by a gaming licensee to the State of South Dakota were high.  Both parties were eager to arrive at an arrangement for Bettor Racing to operate at the Casino and they discussed several types of contractual arrangements for the location and operation of Bettor Racing at the Casino.

8.    During the entirety of these preliminary discussions, Bettor Racing was not represented by an attorney.  The Tribe was represented by counsel who drafted all of the preliminary documents, contracts and modifications thereto, as well as the necessary Tribal resolutions approving of said agreements.

9.    The Tribe's attorneys advised Bettor Racing that any management contract agreed upon by the parties required NIGC approval.  Accordingly, the Tribe prepared and submitted the first contract to the NIGC in March 2004.

2

10. Bettor Racing was advised by the Tribe's counsel that it would take some time for the NIGC to approve the Management Agreement once submitted, but that it could operate under the terms of a consulting agreement pending approval of the ultimate Management Agreement. Following an invitation by the Tribe to do so, Bettor Racing began operating at the Royal River Casino in September 2004. Bettor Racing was advised that nothing prohibited it from operating there and was further advised that the Tribe had spoken directly with the Chairman of the NIGC who approved the same. Payments to the Tribe were made as provided in the consulting agreement and Management Agreement and as otherwise agreed upon between the parties.

11. Following submission of the initial contract to the NIGC, the NIGC requested a number of changes, which changes were made by the parties. On February 8, 2005, the parties executed a contract for the management and operation of Bettor Racing (the "Management Agreement"). All terms of the Management Agreement and profit allocations provided for therein, were negotiated and approved by the Tribe and Bettor Racing

12. The NIGC approved the Management Agreement on March 17, 2005.

13. In 2005, the State of South Dakota reduced its tax on pari-mutuel gaming revenue from 4.5% to 0.25%. This reduction was significant and prompted Bettor Racing to evaluate its business practices. Following the change in tax structure, Bettor Racing, through J. Randy Gallo, notified the Tribe of its intentions to re-locate the business outside of the Royal River Casino so as to submit to and take advantage of this change in South Dakota law. However, Bettor Racing advised that it would continue to honor the existing Management Agreement, guaranteeing the Tribe an annual payment of $300,000, which was the required minimum payment due under the Contract.

3

14.     During Bettor Racing's meeting with the Tribe's counsel and the Tribe, the Tribe's counsel expressed to Bettor Racing that it was critically important for the Tribe to retain Bettor Racing's business at the Royal River Casino.  The Tribe's counsel further advised all parties involved that the Tribe had the ability to do whatever it wanted to do with the net profits it received from the operation of Bettor Racing.  Specifically, the Tribe's counsel advised that it could pay to Bettor Racing a bonus or consulting fee.

15.     The Tribe's counsel thereafter discussed the concept of a bonus and/or consulting fee with NIGC Chairman Phil Hogan, who advised that such arrangements were acceptable so long as they were not specifically set forth in contract.

16.     The Tribe's counsel thereafter prepared a modification to the 2005 Management Agreement, which modification was approved by the Tribe, and then formally executed by the parties on February 15, 2007 (the "First Modification").

17.     The Tribe advised Bettor Racing that it would submit the First Modification to the NIGC for approval and did so; however, the Tribe later requested that the NIGC hold its review of the Agreement in abeyance, citing its ongoing dispute with the State of South Dakota over modifications to its Gaming Compact.  The Tribe did not notify Bettor Racing of its  request to hold approval of the First Modification in abeyance.

18.     During Bettor Racing's operations at the Casino, it increased the revenue it generated significantly, thereby resulting in even more profitability to the Tribe.  Consistent with the parties' discussions regarding the First Modification, the Tribe paid Bettor Racing a bonus for its efforts on an annual basis.

19.     The parties continued to operate under the first modification until that time when the racing climate changed again in such a way that jeopardized Royal River Racing's continued ability to generate business at the volume experienced to date by the parties.  Specifically, in

4

2008, an industry wide increase in fees charged by race tracks to off-track betting operations occurred. This significant increase in fees prompted concern of a chilling effect on the volume of business being done by Bettor Racing.

20.    As a result of this fee increase, the parties again discussed a modification to the Management Agreement. The Tribe's counsel emphasized that it was important to retain Bettor Racing's business and that it was willing to make appropriate modifications to the Management Agreement to do so. The Tribe's counsel drafted the second modification arrangement and made appropriate arrangements for the approval of the same. The second modification was executed on August 1, 2008 (the "Second Modification").

21.    The Tribe assumed responsibility for submitting the Second Modification to the NIGC; however, it never did so. The Tribe advised Bettor Racing that it had taken all steps necessary to obtain approval of the Second Modification. It failed to advise Bettor Racing that the Second Modification had neither been submitted to nor approved by the NIGC.

22.    Both the First and Second Modifications were undertaken with the full knowledge and understanding of the parties. The modifications were executed following thorough discussions of the financial arrangements contemplated by all involved and formal approval at the necessary Tribal levels. In the instances of both modifications, the Tribe, according to its resolutions, took it upon itself to submit the documented modifications to the NIGC for review and approval.

23.    The Tribe received all funds to which it was entitled under Federal law. The Tribe represented that it had the discretion to pay to Bettor Racing a bonus and did so. These bonuses were approved by the Tribe and never contested.

24.    In August 2009, the NIGC conducted a compliance review of the Management Contract.

5

25.     On or about August 27, 2009, the NIGC issued a Notice of Non-compliance to Bettor Racing. The Notice stated that Bettor Racing had failed to pay to the Tribe the required percentage of gaming revenue as required by federal law.

26.     From approximately August 2009 through May 2011, the NIGC conducted an investigation, which investigation resulted in the issuance of a Notice of Violation to both the Tribe and Bettor Racing on May 19, 2011 ("NOV-11-01").

27.     At some point during the NIGC investigation, the Tribe terminated counsel who assisted in the preparation of the Management Agreement and First and Second Modifications. New Counsel assisted the Tribe during the NIGC investigation and with the development of the Tribe's allegations of duress and coercion levied against Bettor Racing during the administrative appeal of NOV 11-01 and the Notice of Proposed Civil Fine Assessment and the pending Tribal Court action.

28.     The NIGC held that Bettor Racing had committed three violations of the Federal Indian Gaming Regulatory Act ("IGRA"), specifically:

1.     First Violation: 25 U.S.C. § 2710(d)(9) and 25 C.F.R. § 573.6(a)(7);

2.     Second Violation: 25 U.S.C. § 2711 and 25 C.F.R. 573.6(a)(7), and

3.     Third Violation: 25 U.S.C. § 2710(b)(2)(A), (d)(1)(A)(ii) and 25 C.F.R. § 522.6(c) and Flandreau Pari-mutuel Betting Ordinance §4.

29.     The NIGC also held that the Tribe committed four violations of the IGRA, specifically:

1.     First Violation: 25 U.S.C. §§ 2710(d)(9) and 25 C.F.R. § 573.6(a)(7);

2.     Second Violation: 25 C.F.R. § 573.6(a)(7);

3.     Third Violation: 25 C.F.R. § 571.13(a), and

4.     Fourth Violation: 25 U.S.C. §§ 2710(b)(2) and 3 and 25 C.F.R. 522.6 and Flandreau Gaming Ordinance § 17-6-1(3).

30.     As part of NOV 11-01, the NIGC demanded that Bettor Racing pay the Tribe $4,544,755.00 in revenues which the NIGC claimed the Tribe should have received during years 2005, 2006, 2007, and 2008.

31.     Pursuant to 25 C.F.R. § 577.3, Bettor Racing filed a Notice of Appeal of the entirety of the NOV 11-01 on June 20, 2011.  It later submitted a Supplemental Statement of Appeal on June 30, 2011, and requested a hearing.

32.     The Tribe intervened in the administrative agency appeal.

33.     During the summer of 2011, the Tribe reached a settlement of the violations levied against it, effectively entering into an agreement with the NIGC whereby the Tribe was required to participate in gaming education classes, and pay a set penalty if it failed to comply with the terms of its settlement with the NIGC.

34.     The parties participated in a mediation in December 2011, which mediation was unsuccessful, in large part because the Tribe refused to accept anything less than the amount set forth in NOV 11-01.

35.     On February 10, 2012, the NIGC issued a Notice of Proposed Civil Fine Assessment against Bettor Racing.  The NIGC assessed a fine against Bettor Racing in the amount of $5,000,000.00.

36.     On March 9, 2012, Bettor Racing filed an appeal of the Notice of Proposed Civil Fine Assessment.  The Tribe also intervened in the Notice of Proposed Civil Fine Assessment.

37.     The original Notice of Violation and Notice of Proposed Civil Fine Assessment were consolidated into one appeal.

38.     The NIGC moved for summary judgment in the administrative appeal, arguing that there were no disputes of material fact such to justify a hearing in the matter.  The Tribe

7

joined in the NIGC's Motion and submitted its own pleadings in support of summary judgment.

39.     Bettor Racing vigorously resisted the Motion for Summary Judgment, insisting that it was entitled to a hearing given that it had not had any opportunity to actively participate or defend itself during the NIGC's 2-year investigation. There were and are still material disputes of fact related to NOV 11-01 and the Notice of Proposed Civil Fine Assessment.

40.     The NIGC's and Tribe's Motions for Summary Judgment were granted and thereafter affirmed by the NIGC in a final decision and order. In its decision, the NIGC determined that the Civil Fine Assessment supplanted the directive contained in NOV 11-01 that Bettor Racing pay $4,544,755.00 to the Tribe. The NIGC's decision constitutes a basic deprivation of rights afforded to Bettor Racing and J. Randy Gallo under the 8th and 14th Amendments, respectively, as well as other basic due process rights afforded to him under Federal law.

41.     In January 2013, the Tribe brought an action against Bettor Racing and J. Randy Gallo in his individual capacity in Flandreau Santee Sioux Tribal Court. Bettor Racing has answered the same and filed a counterclaim against the Tribe for fraud.

42.     Bettor Racing's actions as they related to the operation of the Class III gaming operation at the Flandreau Royal River Casino can neither be characterized as a willful intent to deceive nor an intentional effort to avoid the administrative oversight of the NIGC. To the contrary, throughout the entirety of its business relationship with the Flandreau Santee Sioux Indian Tribe, Bettor Racing made all of its intentions and dealings with the Tribe wholly transparent. Every action taken by both parties was undertaken with the approval of both the attorney for the Tribe and the attorney for the Tribe's Commission on Gaming and, most significantly, the approval of the Tribal Council.

43.     The NIGC acted in excess of its statutory and constitutional authority in proceeding against Plaintiffs, and has threatened to and will, unless restrained by this Court, proceed with enforcement of Order.  Plaintiffs will suffer loss and injury in a substantial amount and Bettor Racing's business has and will continue to be subjected to great and irreparable damage.

44.     Plaintiffs have fully complied with all procedural requirements of the NIGC and IGRA rules and regulations, including appeal to the Chairwoman of the NIGC, and no further right of review or appeal or other remedy is available to Plaintiffs before the NIGC.

45.     Because of the complexity of the underlying matter, the fact that the Plaintiffs have yet to be afforded an opportunity to defend themselves against the allegations, and the size of the fine levied against them, intervention of the Federal Court is required.

Wherefore, Plaintiffs respectfully request:

1. That this Court immediately issue, or as soon as the matter can be heard, its order staying the order of the NIGC pending trial and until ultimate judgment in this action.

2. That final injunction issue directing Defendant from proceeding further against Plaintiffs in the administrative proceeding referred to above, and directing that the Final Order and Decision of the NIGC dated September 12, 2012, be withdrawn and rescinded.

3. For costs and such other relief as the Court may deem proper.

Dated at Sioux Falls, South Dakota, this /0th day of May, 2013.

CUTLER & DONAHOE, LLP
Attorneys at Law

_Meredith A. Moore_

Meredith A. Moore
Onna B. Houck
100 N. Phillips Ave., 9th Floor
Sioux Falls, SD  57104-6725
(605) 335-4950
(605) 335-4966
 Attorneys for Plaintiffs

9