UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| BETTOR RACING, INC. and J. RANDY GALLO, | ) ) ) | CIV. 13-4051-KES |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NATIONAL INDIAN GAMING COMMISSION, | ) ) ) ) | ORDER GRANTING APPLICANT'S MOTION TO INTERVENE AND GRANTING IN PART APPLICANT'S REQUEST FOR JUDICIAL NOTICE |
| Defendant. | ) ) | |
| FLANDREAU SANTEE SIOUX TRIBE, | ) ) ) | |
| Applicant for Intervention. | ) ) | |

Applicant for intervention, the Flandreau Santee Sioux Tribe, moves to intervene as a matter of right in this case, or alternatively, to intervene permissively. Docket 7. Plaintiffs, Bettor Racing, Inc., and J. Randy Gallo, oppose the motion. Defendant, the National Indian Gaming Commission (NIGC), has not taken a position on the motion to intervene. Additionally, the Tribe requests that the court take judicial notice of the action pending in tribal court between the Tribe and Bettor Racing and Gallo. Docket 9. Plaintiffs oppose this motion also. For the reasons set forth below, the Tribe's motion to intervene is granted, and the Tribe's request to take judicial notice is granted in part.

**BACKGROUND**

According to the facts alleged in the application for intervention:

The Tribe, a federally recognized tribe, operates Royal River Casino near Flandreau, South Dakota. The casino, located on tribal lands, is subject to the Indian Gaming Regulatory Act of 1988 (IGRA).[1] The NIGC is an independent federal agency charged with enforcement of the IGRA and regulation of tribal gaming. Gallo lives in Jupiter, Florida, and operates Bettor Racing, a corporation organized under South Dakota law. Bettor Racing is a parimutuel betting business.[2]

The Tribe, Bettor Racing, and Gallo have a decade-long history. In 2003, Gallo approached the Tribe about relocating Bettor Racing from its location in Sioux Falls, South Dakota, to Royal River Casino to avoid a state tax on parimutuel betting. On March 22, 2004, the Tribe and Bettor Racing reached agreement on a management contract and submitted that contract to the NIGC for approval. The NIGC requested a number of changes that the parties subsequently incorporated. The NIGC approved the revised management contract on March 17, 2005.

---

[1] 25 U.S.C. §§ 2701-2720.

[2] Parimutuel betting is "a form of betting and of handling the betting on horse races at racetracks, in which those holding winning tickets divide the total amount bet in proportion to their wagers, less a percentage for the management, taxes, etc." Dictionary.com, http://dictionary.reference.com/browse/parimutuel (last visited October 28, 2013).

On September 20, 2004, while NIGC approval of the management contract was still pending, Bettor Racing entered into a consulting agreement with the Tribe under which it assisted the Tribe in running a parimutuel betting operation at Royal River Casino. This consulting agreement was never approved by the NIGC. From September 20, 2004, to March 17, 2005, Bettor Racing managed the parimutuel betting operation at Royal River Casino under the unapproved consulting agreement in exchange for a share of the net revenue. After the management contract was approved by the NIGC on March 17, 2005, the Tribe and Bettor Racing operated under its terms through February 15, 2007.

In 2006, South Dakota reduced its tax on parimutuel gaming from 4.5 percent to 0.25 percent for certain operations. SDCL 42-7-102. In response to that change, Bettor Racing and the Tribe agreed on a modification of the management contract that reduced the guaranteed minimum payment to be paid to the Tribe. Bettor Racing managed the parimutuel betting operation at Royal River Casino under the modified terms from February 15, 2007, to July 31, 2008. Following an industry-wide increase in racetrack fees charged to off-track facilities, Bettor Racing and the Tribe executed a second modification to the management contract that further reduced the minimum guaranteed payment to the Tribe. The Tribe and Bettor Racing operated under the second modification to the management contract from August 1, 2008, to April 5, 2010. Neither modification was approved by the NIGC.

In August 2009, the NIGC conducted a compliance review and issued a notice of noncompliance to Bettor Racing. AR 31-33.[3] The NIGC found that while Bettor Racing was managing the parimutuel gaming at Royal River Casino under the consulting agreement and the first and second modifications to the management contract, Bettor Racing received fees in excess of the amount allowed under 25 U.S.C. § 2711(c)(1) and (2). Additionally, the NIGC found that Bettor Racing and the Tribe had an arrangement which was designed to cover up the excess payments to Bettor Racing. Under this arrangement, Bettor Racing remitted to the Tribe the amount approved in the original management contract, and the Tribe payed Bettor Racing a bonus equal to the additional amount due Bettor Racing under the modifications. Following an investigation, the NIGC served Bettor Racing and Gallo individually with a notice of violation directing Bettor Racing to pay $4,544,755 to the Tribe as a remedy for the alleged overpayments. AR 2510. The Tribe reached a settlement agreement with the NIGC concerning the Tribe's violations. AR 2611.

Plaintiffs appealed the notice of violation, and the Tribe intervened in the administrative process. AR 2540, 2544. The NIGC also assessed a civil fine against plaintiffs totaling $5,000,000. AR 2665. In its Final Decision and Order, the NIGC upheld the civil fine but stated that the fine supplanted the remedial

---

[3] All citations to "AR" refer to the appropriate page of the administrative record.

payments to the Tribe. *See* AR 3043, 3049 ("As the remedial measure has been supplanted by the [civil fine], the Commission will not consider this issue."); *see also* AR 3066 (denying motion for clarification with respect to the remedial payment to the Tribe).

In January 2013, the Tribe filed suit against plaintiffs in Flandreau Santee Sioux Tribal Court, alleging breach of contract and unjust enrichment. Docket 9-1, Docket 9-2. Plaintiffs have filed a counterclaim in that action alleging that the Tribe engaged in fraud. Subsequently, plaintiffs filed this suit against the NIGC on May 10, 2013, seeking relief from the Final Order and Decision of the NIGC. Docket 1. The Tribe moved to intervene on June 17, 2013. Docket 7.

## DISCUSSION

### I. Article III Standing

In addition to meeting the requirements of Rule 24, a party seeking to intervene must establish Article III standing. *United States v. Metro St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009). " 'To show Article III standing, a [party] has the burden of proving: (1) that he or she suffered an injury-in-fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision.' " *South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986, 989-90 (8th Cir. 2012) (quoting *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008)). An applicant for intervention must submit a pleading stating its claims or

5

defenses, and the court accepts all allegations as true and construes the pleading in favor of the applicant for intervention. *Metro St. Louis Sewer Dist.*, 569 F.3d at 834.

## A. Injury in Fact

An injury in fact is " 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.' " *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To ensure that an injury is not too speculative, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

The Tribe asserts the following injuries in fact: (1) impairment to the Tribe's claims against Bettor Racing in tribal court; (2) reinstatement of the administrative action to which the Tribe is a party; and (3) the inability to participate in the enforcement of federal and tribal gaming laws. Docket 8 at 10-11. Plaintiffs contend that those injuries do not constitute injuries in fact sufficient to confer Article III standing on the Tribe because (1) the Tribe's counterclaims do not arise under federal law and the Tribe cannot establish a case or controversy; (2) the Tribe did not pursue its own appeal of the NIGC's

6

Final Decision and Order; (3) the tribal court has authority to determine the Tribe's claims regardless of the outcome in this action; and (4) the management contract divests this court of jurisdiction. Docket 16 at 3-10.

This court has jurisdiction over plaintiffs' appeal of the NIGC decision. 25 U.S.C. § 2713(c). To intervene, the Tribe needs to show a concrete and impending injury to a judicially cognizable interest. That injury can be denial of a benefit, *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003), or the threat of liability. *Lyon v. Gila River Indian Community*, 626 F.3d 1059, 1077 (9th Cir. 2010) *cert. denied*, 132 S. Ct. 498 (2011). The desire to ensure compliance with a favorable judgment can also confer standing. *See Salazar v. Buono*, 130 S. Ct. 1803, 1814-15 (2010) (plurality opinion) ("A party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment.").

If the court rules in favor of plaintiffs in this case, the Tribe would suffer actual or potential injury in a number of ways. First, to the extent that the findings of the NIGC are admissible in tribal court to prove the Tribe's claims, particularly with respect to the validity of the management contract and its subsequent modifications, the Tribe would lose the ability to rely on those findings in proving its claims in tribal court, if the NIGC is unsuccessful in this federal court action. The Tribe has a significant financial interest in the outcome of the tribal court case, particularly because the NIGC judgment no longer requires plaintiffs to pay restitution to the Tribe. Second, because the

7

Tribe is a party to the NIGC proceedings, the Tribe would incur additional delay and expense if the court rules in favor of plaintiffs in this case and remands for further administrative proceedings. Third, the Tribe directly benefits from the enforcement of the IGRA and NIGC regulations. If the court rules in favor of plaintiffs in this case, the Tribe would lose the benefits Congress intended to confer by passing the IGRA. Therefore, the Tribe is in danger of sustaining a direct injury which is sufficient to confer Article III standing.

> B. **Traceability**

" 'Traceability requires proof of causation, showing the injury resulted from the actions of the defendant and not . . . [from] the independent action of some third party not before the court.'" *Charvat*, 725 F.3d at 824 (quoting *Oti Kaga*, 342 F.3d at 878) (internal quotation marks omitted). " 'Not every infirmity in the causal chain deprives a [party] of standing.' " *Id.* at 825 (quoting *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 961 (8th Cir. 2011)).

There is a causal connection between the Tribe's alleged injuries and plaintiffs' attempt to invalidate the decision of the NIGC. If the court grants plaintiffs' requested relief, the Tribe will suffer the injuries enumerated above. The Tribe's injuries are therefore traceable to the relief plaintiffs request. *See Cal. Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 47 (D.D.C. 2012) ("The causation prong is satisfied because the threatened loss . . . is fairly traceable to the agency action that the plaintiffs seek to compel in the instant action."). Therefore, the Tribe satisfies the traceability requirement of standing as well.

8

### C. Redressability

In order to demonstrate Article III standing, the Tribe must show "a likelihood that the requested relief will redress the alleged injury." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012). The Tribe has shown redressability because the injuries alleged—inability to use the NIGC decision in tribal court, expense and delay of further administrative proceedings, and the loss of protection given to the Tribe by proper enforcement of the IGRA—would be redressed by a judicial determination in this case that the NIGC's decision should stand. Accordingly, the Tribe has standing to intervene.

## II. Timeliness

Both intervention of right and permissive intervention must be timely. Fed. R. Civ. P. 24(a), (b)(1). When considering whether a motion to intervene is timely, a court "should specifically consider: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011).

The Tribe moved to intervene slightly over one month after this action was initially filed. When the motion to intervene was filed, the NIGC had not filed an answer. Plaintiffs make no argument that the motion to intervene is not

9

timely. Given the very early stage of this litigation, the fact that the Tribe did not delay in filing its motion to intervene, and the minimal prejudice to the existing parties, the Tribe's motion to intervene is timely.

## III. Intervention of Right

Under Rule 24, the court must permit a party to intervene when:

> [The movant] claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) (citing *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997)) (requiring a "cognizable interest" that "may be impaired as a result of the litigation" and "is not adequately protected by the existing parties"). The Eighth Circuit construes Rule 24 liberally and resolves any doubts in favor of the proposed intervenors. *See United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995) (listing cases); *see also Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) ("Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action.").

### A. Cognizable Interest

"An interest is cognizable under Rule 24(a)(2) only where it is 'direct, substantial, and legally protectable.'" *Med. Liab. Mut. Ins. Co.*, 485 F.3d at

1008 (quoting *Union Elec. Co.*, 64 F.3d at 1161). An economic interest alone or an interest that is " 'contingent upon a sequence of events before it becomes colorable' " will not satisfy Rule 24(a)(2). *Id.* (quoting *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998)). "[I]ntervention may be based on an interest that is contingent upon the outcome of the litigation." *Union Elec. Co.*, 64 F.3d at 1162. The interest requirement is a practical standard that should be construed broadly. *Id.* (quoting *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 949 (8th Cir. 1983)) ("The court should be mindful that '[t]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process.' ").

The Tribe has a cognizable interest that supports intervention in this case. The Tribe has a direct interest in the tribal court case, and its ability to litigate certain elements of that case might be impacted by this court's decision in the instant case. Furthermore, a finding for plaintiffs in this case would impose expenses and delay on the Tribe due to its involvement in the administrative matter. Finally, the Tribe has a financial, social, and legal interest in the effective and fair enforcement of the IGRA, both in this case and generally. These interests are sufficient to establish that, as a practical matter, the Tribe is a party concerned with the outcome of this case and should be allowed to intervene.

### B. Impairment of Interest

Rule 24(a)(2) does not require the Tribe to prove to a certainty that its interests will be impaired, but only that the disposition of this action may as a practical matter impair its interests. *See Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1307-08 (summarizing various formulations of the standard). Plaintiffs argue that because the Tribe would still be able to bring its claims in tribal court, its interests would not be impaired by a ruling in this case. The court disagrees. Even though the tribal court forum would still be available, the Tribe's ability to litigate certain issues, such as the validity of the consulting agreement, management contract, and the modifications to the management contract; the permissibility of the bonus payments to plaintiffs; and the ultimate responsibility for the violation of the IGRA, could be substantially limited. Furthermore, the interest of the Tribe in the finality of the administrative appeal process to which it is a party would be impaired if this court finds in favor of the plaintiffs, forcing the Tribe to incur additional expense and delay. Finally, the Tribe's interests in the enforcement of the IGRA could be impaired by a decision in favor of the plaintiffs if the court finds, as plaintiffs request, that NIGC procedures do not comply with the Constitution.

### C. Representation by Present Parties

Ordinarily, an applicant for intervention bears only a " 'minimal burden of showing that its interests are not adequately represented by the parties.' " *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir.

2003) (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)). But the Eighth Circuit imposes a heavier burden on an applicant for intervention with respect to this factor when a party in the suit has an obligation to represent the interests of the applicant. *See id.* (citing *Union Elec. Co.*, 64 F.3d at 1168). This heavier burden is appropriate when, as here, "one of the parties is an arm or agency of the government, and the case concerns a matter of sovereign interest . . . [because] the government is presumed to represent the interests of all its citizens." *Mausolf*, 85 F.3d at 1303 (internal quotations omitted). "[An applicant for intervention] can rebut the presumption that the government is adequately representing its interests by showing that its interests actually differ from or conflict with the government's interests." *South Dakota ex rel. Barnett*, 317 F.3d at 785-86 (citing *Union Elec. Co.*, 64 F.3d at 1169). A conflict of interest cannot be potential, theoretical, unsubstantiated, or speculative. *See id.* at 786.

Plaintiffs argue that the NIGC will adequately represent the Tribe in this matter because the NIGC's purpose is the enforcement of the IGRA, and the IGRA "serves to promote 'tribal economic development, self-sufficiency, and strong tribal governments' and shield tribes from the influence of organized crime to ensure that the tribes are the primary beneficiaries of tribal gaming." *Colombe v. Rosebud Sioux Tribe*, 918 F. Supp. 2d 952, 956 (D.S.D. 2013) (quoting *First Am. Kickapoo Operations, LLC v. Multimedia Games, Inc.*, 412 F.3d 1166, 1167 (10th Cir. 2005)); *see also* 25 U.S.C. § 2702.

13

It is true that the NIGC and the Tribe have some overlapping interests. But the Tribe has interests that the NIGC does not share. First, while the NIGC is interested in upholding its administrative decision, the Tribe is interested in preserving parts of that decision for a different purpose, namely, to establish facts beneficial to the Tribe's action in tribal court. Second, the Tribe's narrow financial interest is not adequately represented by the NIGC, as evidenced by the fact that the NIGC upheld the civil fine against plaintiffs but found that the fine supplanted the nearly $3.5 million still owed by Bettor Racing to the Tribe under the initial NIGC decision. Because the Tribe's interests could be impaired by the outcome of this case, and the Tribe is not adequately represented by the existing parties, the court grants the Tribe's motion to intervene under Rule 24(a)(2).

## IV. Permissive Intervention

In the alternative, even if the court denied intervention of right in this case, the court would grant the Tribe's motion for permissive intervention. Rule 24 states that:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b). If an applicant for intervention satisfies the requirements of Rule 24(b), "permissive intervention is wholly discretionary." *South Dakota ex rel. Barnett*, 317 F.3d 787. "The principal consideration in ruling on a Rule

14

24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Id.* (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)).

### A. Common Questions of Law or Fact

The Tribe's claims and defenses share questions of law or fact with the main action in this case. Plaintiffs try to escape this conclusion by arguing that they are only challenging the action of the NIGC as it applies to them. But a review of plaintiffs' complaint indicates that there are numerous factual allegations made by plaintiffs which implicate the Tribe in the alleged violations of the IGRA. *See* Docket 8 at 2-3. In asserting its defense of the NIGC's decision and its counterclaims, the Tribe is in a unique position to dispute relevant and probative facts. The requirement that the Tribe's claims and defenses share a question of law or fact with the underlying action is satisfied.

### B. Undue Delay or Prejudice

Plaintiffs object to permissive intervention because they claim the Tribe is attempting to argue issues that the Tribe forfeited by not appealing the Tribe's notice of violation. Plaintiffs argue that those additional claims would unduly delay or prejudice the adjudication of plaintiffs' rights. Plaintiffs also suggest that including the Tribe's counterclaims would change the focus of the instant case and thereby create undue prejudice and delay.

Despite plaintiffs' assertions, the Tribe has an important role to play in the adjudication of the factual allegations made by plaintiffs. Plaintiffs would

not suffer undue prejudice from the involvement of the Tribe, particularly when many of plaintiffs' claims relate to the interaction between plaintiffs and the Tribe over almost a decade. Furthermore, due to the early stage at which the Tribe seeks to intervene, there will be little unnecessary delay or duplication in this litigation if intervention is allowed. Finally, intervention by the Tribe will improve judicial economy by including a party with such a direct relationship to the claims raised by plaintiffs. Therefore, the court alternatively grants the Tribe's motion to permissively intervene under Rule 24(b).

**V.    Judicial Notice**

Federal Rule of Evidence 201 states that a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

"Writers generally agree that courts can take judicial notice of court records under Rule 201(b)(2)." 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Fed. Prac. & Prod. Evid.* § 5106.4 (2d ed. 2005). A court "may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (internal quotations omitted). Plaintiffs argue that it is improper for

16

the court to notice facts which are still disputed, and that the court cannot take notice of court records other than opinions.

Plaintiffs provide the court with no authority supporting their position that the existence of a separate court proceeding is not an adjudicative fact. Establishing the existence of the tribal court case is a relevant component for the Tribe to demonstrate one of its proffered interests justifying intervention. Additionally, the court is not restricted to only taking judicial notice of formal opinions. *See Great Plains Trust Co. v. Union Pacific R.R. Co.*, 492 F.3d 986, 996-97 (8th Cir. 2007) (citing *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996)) (taking judicial notice of "proceedings in other courts that relate directly to matters at issue").

Therefore, the court will take judicial notice of the complaint filed in the tribal court for the limited purpose of showing that an action has been filed by the Tribe against plaintiffs. The court does not take judicial notice of any allegations made in the tribal court action by either party, or any testimony or argument before the tribal court, as those facts are not indisputable.

## CONCLUSION

The court takes judicial notice of the tribal court complaint for the limited purpose of establishing that an action by the Tribe against plaintiffs is pending there. Additionally, the court finds that the Tribe is entitled to intervene of right under Rule 24(a)(2). The court alternatively grants permission for the Tribe to intervene under Rule 24(b)(1)(B). Accordingly, it is

ORDERED that the Tribe's motion to intervene (Docket 7) is granted.

IT IS FURTHER ORDERED that the Clerk of Courts will file the Tribe's answer and counterclaim (Docket 10).

IT IS FURTHER ORDERED that the Tribe's request for judicial notice (Docket 9) is granted in part, and the court will take judicial notice of the fact that an action is pending in tribal court.

IT IS FURTHER ORDERED that the stay dated October 22, 2013, is lifted, and the parties will jointly file a proposed schedule for further proceedings by **November 20, 2013**.

Dated November 6, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE